IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ANDREW C. GELLER and JODY L. GELLER, individually and on behalf of other similarly situated persons,

Plaintiffs,

v.

EQUIFAX INC.,

Defendant

Case No.:

**CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1. This is a consumer data privacy class action seeking money damages and injunctive relief on behalf of Plaintiffs Andrew C. Geller and Jody L. Geller and other similarly situated consumers (the "Class Members") domiciled in the United States whose personal information was compromised in a massive breach of the data systems used and controlled by Defendant Equifax Inc. ("Equifax" or the "Defendant") between May 1, 2017 and July 29, 2017, inclusive (the proposed "Class Period") (the "Data Breach").

2. Plaintiffs bring the following federal claims and Florida state law and equitable claims on behalf of all Class Members (the "National Class"):

a. Willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.;

b. Negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.;

3. Plaintiffs Andrew C. Geller and Jody L. Geller bring the following Florida state law and equitable claims on behalf of Class Members domiciled in the State of Florida during the Class Period (the "Florida Subclass"):

a. Negligence under Florida law; and

b. Unjust Enrichment under Florida law.

4. Plaintiffs also bring a claim for Declaratory Relief on behalf the National Class and the Florida Subclass.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 USC § 1331 because this action arises in part under a federal statute.

6. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds $5,000,000, and at least one member of the class is a citizen of a state other than Florida.

7. This Court has supplemental jurisdiction over the state law claims under 28 USC § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

8. Venue is appropriate in this District pursuant to 28 USC § 1391(b)(1) because Defendant is headquartered in this District.

## III. PARTIES

9. Plaintiff Andrew C. Geller is an adult domiciled in Palm Beach County, State of Florida. On the Equifax website, Mr. Geller followed the instructions and Equifax informed him that he may be affected by the Data Breach.

10. Plaintiff Jody L. Geller is an adult domiciled in Palm Beach County, State of Florida. On the Equifax website, Mrs. Geller followed the instructions and Equifax informed her that she may be affected by the Data Breach.

11. Defendant Equifax Inc. ("Defendant" or "Equifax") is one of the "big three" credit reporting bureaus, maintaining a database of the credit and personal information of more than half all adults in the United States. Equifax is headquartered in Atlanta, Georgia and organized under the laws of Georgia.

## IV. FACTUAL ALLEGATIONS

12. Equifax is one of the three major credit-reporting agencies in the United States. It is engaged in a number of credit-related services for both individuals and businesses, and sells products including Consumer Reports, which provides "access to current personally identifiable information for over 210 million consumers."

13. As of December 31, 2016, Equifax employed 9,500 employees in 24 countries and generated annual revenues of more than $3.1 billion.

14. To generate this revenue, Equifax gathers Personally Identifiable Information ("PII") on tens of millions of Americans and utilizes it to enable businesses "to make credit and service decisions, manage their portfolio risk, automate or outsource certain human resources, employment tax and payroll-related business processes, and develop marketing strategies concerning consumers and commercial enterprises."

15. The PII Equifax gathers includes "credit, income, employment, asset, liquidity, net worth and spending activity, and business data, including credit and business demographics, that we obtain from a variety of sources, such as credit granting institutions, public record information, income and tax information primarily from large to mid-sized companies in the U.S., and survey-based marketing information."

16. On its website, Equifax states that it is subject to the Fair Credit Reporting Act ("FCRA"). The website further states that FCRA, "among other things, restricts who has access

to your sensitive credit information and how that information can be used."[1] Despite the Company's understanding of FCRA and its mandate to protect the PII that it collects, stores, and maintains, Equifax failed to take reasonable and adequate steps to maintain the security of the PII in its custody and control.

17. On September 7, 2017, Equifax published a press release, disclosing a massive data breach in which the PII of approximately 143 million Americans was accessed by unknown hackers. The PII included names, Social Security numbers, birth dates, addresses, driver's license numbers, credit card numbers, and other PII.

18. As of the filing of this Complaint, Plaintiffs and Class members affected still have not been personally notified by Equifax of the extent to which they may be affected. Nowhere in Equifax's press release or other public disclosures regarding the Data Breach has Equifax stated that the information obtained was encrypted.

19. According to Equifax, the hackers had access to the PII from at least May 2017 until July 29, 2017, when the intrusion was discovered. A preliminary investigation of the breach found that the hack was due to Equifax's own system—specifically, a vulnerability in an application in its U.S. website.

20. The Equifax press release was published more than a month after the Company first learned of the Data Breach. Equifax has failed to explain why it waited almost six weeks before warning people potentially impacted by the breach that their PII had been stolen.

21. While failing to alert the public of the catastrophic and unprecedented Data Breach, several executives at the Company—including CFO John Gamble—began liquidating their Equifax stock, selling approximately $1.8 million in stock just days after the Company

[1] http://www.equifax.com/privacy/fcra, last visited on September 12, 2017.

learned of the Data Breach and prior to the Company's stock inevitable drop from the announcement of the Data Breach.

22. Equifax has a unique and specialized awareness of the risks of data breaches, cautioning consumers that "[i]dentity theft is committed when someone steals your personal information – such as your name, Social Security number, and date of birth – typically to hijack your credit and use it to open up new credit accounts, take out loans in your name, or access your bank or retirement accounts. An identity thief can even use your personal information to steal your tax refunds, seek medical services, or commit crimes in your name."[2]

23. As part of its business, Equifax touts itself as an industry leader in data breach security. Equifax offers services directly targeted to assisting consumers who have encountered a data breach, stating, for example: "If you've recently been notified that your information was involved in a data breach, you likely have a lot of questions. We're here to help answer those questions and help you understand the steps you may take to help better protect your identity in the future."[3] The website continues, "it is wise to consider taking advantage of the credit monitoring product, if it is offered[,]" and advertises its own "Equifax ID Patrol" and "Equifax Complete Family Plan" products to data breach victims, assuaging them that "a surprise-free future starts here."

24. During the first six months of 2017 alone, Equifax earned more than $205 million in revenue from its "Global Consumer Solutions" segment, which includes revenues generated from "credit information, credit monitoring and identity theft protection products sold directly and indirectly to consumers via the internet and in various hard-copy formats. . . ."

---

[2] https://www.equifax.com/personal/education/identity-theft/what-is-identity-theft.

[3] https://www.equifax.com/personal/identity-theft-protection.

25. Despite its unique knowledge of the risks of a data breach as well as the critical nature of the PII that it collects, stores, and maintains, Equifax failed to take adequate and reasonably necessary steps to protect the vast amounts of PII in its possession.

26. The Gramm-Leach-Bliley Act ("GLBA") imposes upon "financial institutions," including credit reporting agency Equifax, "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. §6801. Financial institutions must meet certain standards relating to administrative, technical, and physical safeguards:

> (1) to insure the security and confidentiality of customer records and information;
>
> (2) to protect against any anticipated threats or hazards to the security or integrity of such records; and
>
> (3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

15 U.S.C. §6801(b).

27. To satisfy the GLBA, financial institutions must "develop, implement, and maintain a comprehensive information security program that is [1] written in one or more readily accessible parts and [2] contains administrative, technical, and physical safeguards that are appropriate to [their] size and complexity, the nature and scope of [their] activities, and the sensitivity of any customer information at issue." *See* 16 C.F.R. §314.3.

28. Under the Interagency Guidelines Establishing Information Security Standards, 12 CFR Appendix D-2 to Part 208, financial institutions must "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." *See id.* at Supplement A, §II.

29. "Nonpublic personal information," includes PII (such as the vast PII compromised during the Data Breach) under the GLBA. Likewise, "sensitive customer information" includes the same PII under the Interagency Guidelines Establishing Information Security Standards.

30. At all relevant times, Equifax designed and implemented its policies and procedures regarding the security of protected financial information and PII. Equifax's policies and procedures failed to meet reasonable and best industry practices in safeguarding this information.

31. Equifax failed to "develop, implement, and maintain a comprehensive information security program" with "administrative, technical, and physical safeguards" that were "appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." This includes, but is not limited to: (1) Equifax's failure to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class members' PII; (2) Equifax's failure to detect the Data Breach in a timely manner; and (3) Equifax's failure to disclose that its data security practices were inadequate.

32. Equifax also failed to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems[.]" This includes, but is not limited to, Equifax's failure to notify the affected individuals themselves of the Data Breach in a timely and adequate manner.

33. Plaintiffs and Class members relied on Equifax to keep their sensitive information safeguarded and otherwise confidential.

34. With access to an individual's sensitive PII, criminals can conduct many reprehensible actions. Besides draining a victim's bank account, hackers can: (1) obtain a

driver's license or other official identification in the victim's name but with the hacker's picture; (2) obtain government benefits; and/or (3) file a fraudulent tax return.

35. Consumers place a high value on their PII. Recognizing this, many companies now offer consumers an opportunity to sell their information to advertisers and other third parties. Any company that transacts with consumers and then compromises the consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

36. An individual whose PII has been compromised may not experience identity theft for years. For example, in 2012, hackers gained access to LinkedIn's users' passwords. It was not until May 2016—four years later—however, that hackers released the stolen data.[4]

## V. CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the National Class defined as follows:

> All persons domiciled in the United States between May 1, 2017 and July 29, 2017 and whose personal information was unlawfully obtained in the breach of Equifax's data systems as announced on or about September 7, 2017.

38. Plaintiffs also bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the Florida Subclass defined as follows:

> All persons domiciled in the State of Florida between May 1, 2017 and July 29, 2017 and whose personal information was unlawfully obtained in the breach of Equifax's data systems as announced on or about September 7, 2017.

39. Excluded from the Class are Defendant, its past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of

---

4 https://blog.linkedin.com/2016/05/18/protecting-our-members., last visited on September 12, 2017.

them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

40. Numerosity: Defendant estimates that the Data Breach may impact more than 143 million people. The Class Members are so numerous and dispersed nationwide that joinder of all members is impractical.

41. Commonality: common questions of law and fact exist as to all members of the Class (and Subclasses) and predominate over any questions affecting solely individual members of the Class or Subclass.

42. Typicality: Plaintiffs' claims are typical of the claims of all other Class Members. Both Plaintiffs visited the Equifax website to confirm whether their PII was impacted by the Data Breach.

43. Adequacy: Plaintiffs will fairly and adequately protect the interests of all members of the Class and Subclasses in the prosecution of this action. Plaintiffs are similarly situated with, and have similar injuries to, the members of the Class and Subclasses they seek to represent. Both Plaintiffs are adults and have retained counsel experienced in complex class action matters generally and in the emerging field of digital privacy litigation specifically.

44. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this case, because joinder of all members is impractical if not impossible. Furthermore, the cost of litigating each claim individually might exceed actual and/or statutory damages available to each class member thus making it impossible for each class member to litigate his or her claims individually. There will be no difficulty in managing this action as a class action.

## VI. ALLEGATIONS SUPPORTING INJUNCTIVE RELIEF

45. Plaintiffs have been injured by Defendant's willful and/or negligent violation of federal and State laws.

46. Defendant continues to possess Plaintiffs' sensitive PII and continues to provide inadequate data security to protect the PII.

47. Plaintiffs will suffer further harm if additional PII is unlawfully accessed in the future.

48. Plaintiffs will be irreparably harmed if an injunction does not issue enjoining the Defendant from continuing to evade its duty to protect the PII.

49. Plaintiffs have no plain, speedy or adequate remedy at law.

## VII. COUNTS

### COUNT I
### Willful Violation of the Fair Credit Reporting Act
### On Behalf of National Class

50. Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

51. The Fair Credit Reporting Act requires "consumer reporting agencies" to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information, including appropriate measures to protect the confidentiality of such information. 15 U.S.C. § 1681 *et seq*.

52. Under FCRA, a "consumer report" means any communication of information by a "consumer reporting agency" bearing on a customer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or collected as a factor in establishing eligibility for credit or insurance. 15 U.S.C. § 1681b.

53. Further, a “consumer reporting agency” means any person which regularly engages in whole or in part the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

54. Plaintiffs and Class Members are “consumers” or “persons” under FCRA, 15 U.S.C. § 1681a.

55. Defendant is a “consumer reporting agency” under FCRA because it regularly engages in providing credit or other information on consumers for the purpose of determining whether to extend credit.

56. Defendant maintains “consumer reports” within the meaning of FCRA.

57. As a “consumer reporting agency,” Defendant is required to “maintain reasonable procedures” to limit the use of consumer reports, including reasonable and effective procedures to limit unauthorized access to Defendant’s databases. 15 U.S.C. § 1681e.

58. Defendant willfully breached its requirement under FCRA to sufficiently protect its databases.

59. Under FCRA, Plaintiffs and Class Members are entitled to statutory damages of $100 per person for violations of this duty, or actual damages if greater (to a maximum of $1,000 per person), plus costs and attorney’s fees. 15 U.S.C. § 1681n.

**COUNT II**
**Negligent Violation of the Fair Credit Reporting Act**
**(Pled in the Alternative to Count II)**
**On Behalf of National Class**

60. Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

61. The Fair Credit Reporting Act requires "consumer reporting agencies" to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information, including appropriate measures to protect the confidentiality of such information.

62. Under FCRA, a "consumer report" means any communication of information by a "consumer reporting agency" bearing on a customer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or collected as a factor in establishing eligibility for credit or insurance.

63. Further, a "consumer reporting agency" means any person which regularly engages in whole or in part the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

64. Plaintiffs and Class Members are "consumers" or "persons" under FCRA.

65. Defendant is a "consumer reporting agency" under FCRA because it regularly engages in providing credit or other information on consumers for the purpose of determining whether to extend credit.

66. Defendant maintains "consumer reports" within the meaning of FCRA.

67. As a "consumer reporting agency," Defendant is required to "maintain reasonable procedures" to limit the use of consumer reports, including reasonable and effective procedures to limit unauthorized access to Defendant's databases.

68. Defendant was negligent in failing to maintain reasonable procedures to protect its databases.

69. Defendant's conduct violated FCRA and Plaintiffs and Class Members have been damaged by Defendant's conduct in an amount to be determined at trial.

70. Under FCRA, Plaintiffs and Class Members are statutorily entitled to recover actual damages plus costs and attorney's fees. 15 U.S.C. § 1681o.

**COUNT II**
**Unjust Enrichment Under Florida Law**

71. Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

72. Plaintiffs have conferred a benefit on Defendant, and Defendant has knowledge thereof.

73. Defendant voluntarily accepted and retained the benefit conferred upon Defendant by Plaintiffs.

74. The circumstances render Defendant's retention of the benefit inequitable without paying the value thereof.

75. It is against equity and good conscience to permit Defendant to retain the profits realized by the improper failure to expend resources to properly protect the PII.

**COUNT IV**
**Negligence**

76. Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

77. Defendant owed to Plaintiffs and the Class the duty to exercise due care in the protection of Plaintiffs' PII in its possession.

78. Defendant also owed Plaintiffs and the Class the duty to provide reasonably prompt notice of any material breaches of its databases and the full extent of any danger posed by the breach.

79. Defendant knew or should have known that it was providing inadequate data protection commensurate with the sensitivity of the PII it stored and aggregated.

80. Defendant breached its duty of due care.

81. But for the Defendant's breach of its duty, the Plaintiffs' PII would not have been unlawfully obtained.

82. Defendant's breach actually and proximately caused injury to Plaintiffs and the Class.

**COUNT V**
**Declaratory Relief**
**(28 USC § 2201)**

83. Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

84. An actual and substantial controversy exists between Plaintiffs and Defendant over the Defendants' duty to comply with statutory, common law and equitable duties to protect the Plaintiffs' PII from unauthorized access.

85. This case is justiciable because the Defendant is currently in violation of federal and state law with respect to Plaintiffs and the Class.

86. Plaintiffs' requested relief does not fall into any exception listed in 28 USC § 2201(a).

87. Declaratory relief will clarify the rights and obligations of the parties and any putative class members and is therefore appropriate to resolve this controversy.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court:

A. Certify this action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appoints Plaintiffs as class representatives and their counsel as Class Counsel;

B. Award compensatory damages, including statutory damages, to Plaintiffs and the Class for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Award restitution to Plaintiffs and the Class against Defendant;

D. Award punitive damages in an amount that will deter Defendant and others from like conduct;

E. Permanently restrain Defendant and its officers, agents, employees and attorneys from violating the statutes referred to herein;

F. Award Plaintiffs the reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G. Grant Plaintiffs such further relief as the Court deems appropriate.

## IX. JURY DEMAND

Plaintiffs demand a trial by jury of all issues triable.

Dated: September 22, 2017

Respectfully submitted,

**WITES & KAPETAN, P.A.**
Attorneys for Plaintiffs and the Class
4400 North Federal Highway
Lighthouse Point, FL 33064
954-570-8989/954-354-0205 (fax)
By: ***/s/ Marc A. Wites***
Marc A. Wites
Fla. Bar No.: 24783
mwites@wklawyers.com

STEVEN C. HOLZMAN
Fla. Bar No. 667617
scholzmanlaw@gmail.com
**LAW OFFICES OF STEVEN C. HOLZMAN, PA**
4400 North Federal Highway
Lighthouse Point, FL 33064
561-789-5366